UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY RODGES MASON,

      Plaintiff,                            Case No.05-72346
                                                HON. BERNARD A. FRIEDMAN

vs.

CITY OF PONTIAC POLICE OFFICER
DARRYL ADAMS and CITY OF PONTIAC
POLICE OFFICER ROBERT SMITH,

      Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Plaintiff, Bobby Rodges Mason, alleges in his Complaint that on July 11, 2004 he was a victim of excessive force by Defendants, two City of Pontiac police officers. He claims that in the course of being arrested by Defendants, handcuffs were placed on him too tightly, causing him injury, pain and suffering.

Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, claiming qualified immunity, and arguing that there is an absence of an actual injury attributable to the handcuffing of Plaintiff.

Pursuant to E.D.Mich. L.R. 7.1(e)(2), Defendants' Motion will be decided without oral argument.

1

## II.  Standard of Review

Summary judgment is proper where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Id.  If the movant carries its burden of showing an absence of evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

## III.  Facts

Defendants arrested Plaintiff on July 11, 2004.  Plaintiff did not resist Defendants' efforts to arrest him.  In the course of the arrest, Plaintiff was handcuffed.  Plaintiff contends that he complained that the handcuffs were on too tight.  Dft. Exh. A, pg. 64.  Defendants deny having heard Plaintiff's complaints.  Dft. Exh. B, p. 31; Dft. Exh. C, p. 10.

Defendant Adams testified in his deposition that he used two pairs of handcuffs, linked together like a chain, when handcuffing Plaintiff, because Plaintiff stated that he had wrist problems. Pltf. Exh. 2, p. 33.

During the booking process, Plaintiff's handcuffs were removed, and he was fingerprinted and offered medical attention.  Plaintiff declined the offer of medical attention. Dft. Exh. A, p. 73, Dft. Exh. D.  Additionally, Plaintiff did not claim to have suffered any injury. Dft. Exh. D.

Three days later, on July 14, 2004, Plaintiff went to the North Oakland Medical Center's emergency room for treatment, claiming that his right wrist was experiencing pain. Pltf. Exh.1, p. 80. The medical record from this visit state that there is "no evidence of fracture, deformity or destructive change." Dft. Exh. E4. The record from this visit does, however, show mild swelling on the back side of both hands. Id. In addition, the record notes a small linear abrasion on the back side of the right hand. Id. Plaintiff was not offered any treatment, and was discharged. Id.

On February 28, 2005, Plaintiff visited Dr. Mehul Mehta regarding his right hand. Dft. Exh. E1. Under a heading entitled "Impression," Dr. Mehta speculated that Plaintiff suffered from either carpal tunnel syndrome or early arthritis. Id. Dr. Mehta's conclusions did not link these possible diagnoses to Plaintiff's handcuffing.

On August 1, 2006 Plaintiff was examined by Dr. Steven J. Heithoff, an orthopedic hand surgeon. Dft. Exh. F. The record of this visit indicates that during his examination, Plaintiff stated that he did not have any pain in his left hand, and that his complaints were limited to his right hand. Id. Dr. Heithoff, after examining the medical record from Plaintiff's July 14, 2004 visit to North Oakland Medical Center and Plaintiff's February 28, 2005 visit to Dr. Mehta, determined that there was "no diagnosis of any radial sensory nerve injury which is a typical injury of a handcuff." Id.

In addition, Dr. Heithoff references an April 4, 2005 note from Dr. Mehta which stated, "[r]eally, there is no reason he has the pain that I can identify." Dr. Heithoff himself states that Plaintiff's "wrist pain is subjective in nature," and that

> It is also my opinion there is no objective evidence of any injury to his right hand or wrist which would be due to handcuffs. . . the most common injury from

3

> handcuffs is contusion to the dorsal sensory branch of the radial nerve. This is negative on clinical exam, negative by history and negative on EMG. . . Therefore, it is my conclusion that there is no evidence of any injury due to the handcuff incident in question. In fact, there is no evidence of any pathology regarding his right wrist.

Id.

## IV.    Analysis

Plaintiff brings his cause of action under 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but provides a method for bringing a cause of action regarding other rights under federal law. Graham v. Connor, 490 U.S. 386 (1989). Plaintiff's claim seeks redress for the alleged use of excessive force during his arrest, in violation of the Fourth Amendment.

### A.    Qualified Immunity

Defendants in this matter are City of Pontiac police officers, and were acting under color of law during the incident at issue. Defendants have raised the affirmative defense of qualified immunity, as provided to governmental employees when operating within the scope of their assigned duties. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id.

The court's "initial inquiry" in matters of qualified immunity must be "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201. As the Supreme Court explains this step, and the second step in this inquiry,

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified

immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id.

The Supreme Court has explained that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Graham v. Connor, 490 U.S. 386 (1989). In defining the parameters of this objective standard of reasonableness, the Supreme Court has further explained that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. *citing* Malley v. Briggs, 475 U.S. 335, 341 (1986)(qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

The *Saucier* court outlined a "further dimension" to the qualified immunity inquiry. As the court explained,

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable,

however, the officer is entitled to the immunity defense.

Saucier, 533 U.S. at 205.

Here, the first step of the analysis is to determine whether, taken in a light most favorable to the party asserting the injury, the facts alleged show the officers' conduct violated a constitutional right. The constitutional right at issue, the Fourth Amendment, prohibits unduly tight handcuffing in the course of an arrest. Martin v. Heideman, 106 F.3d 1308, 1313 (6th Cir. 1997); Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir. 1993).

The next step in this inquiry is to determine whether the right Plaintiff claims was violated was clearly established. The prohibition against unduly tight handcuffing was clearly established at the time of Plaintiff's arrest. Martin, *supra*. However, as explained above, this inquiry requires the court to determine whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

The court has explained that "[s]omething more than negligence, or the mere failure to heed a prisoner's complaints, must be shown. If every case in which a person taken into custody with handcuffs were to give rise to a question of constitutional dimension requiring factual inquiry, literally every such case would require submission to the fact finder." Nemeckay v. Rule, 894 F.Supp. 310, 315(1995). "In determining whether qualified immunity will be accorded, we do not expect officers to be constitutional scholars, able to make fine, academic distinctions about how the law may apply to the circumstances they are confronting while they are in the heat of an arrest." Id. at 317.

Here, the inquiry is whether a reasonable officer in Defendants' position should have known that the alleged conduct was unlawful. Taking Plaintiff's allegations that he complained

6

that the handcuffs were too tight, even after Defendants used two sets instead of one in order to alleviate pain in Plaintiff's wrists, "[t]his Court must ask whether Defendants had reason to know that, under the circumstances of this particular arrest, failure to heed Plaintiff's complaints could be considered an excessive use of force." Id. at 316.

An analysis of the law at the time of the arrest indicates that a grant of qualified immunity is appropriate. Past findings of excessive force due to the failure to loosen an arrestees's handcuffs indicate that those cases involved egregious conduct, in addition to the handcuffing, such as rough driving to toss the arrestee around in the officer's car, lifting the arrestee up by the handcuffs, or other aggressive behavior. *See, e.g.,* Kostrzewa v. City of Troy, 247 F.3d 633 (6th Cir. 2001); McDowell v. Rogers, 863 F.2d 1302(6th Cir. 1988). Here, there are not allegations that Defendants did any of the sort of malicious or abusive things outlined in other excessive force handcuffing cases.

Accordingly, it is not clear that a reasonable officer would, at the time, believe that a failure to respond to a complaint about tight handcuffs, after having already made concessions following the arrestee's stated concerns about his wrists, and without additional inflammatory actions, could result in a Fourth Amendment violation. The officers could have reasonably expected that by using two sets of handcuffs, they had sufficiently assisted Plaintiff in alleviating any pain from the handcuffs.

Accordingly, the Court finds that Defendants are entitled to qualified immunity.

    **B.**    **Excessive Force**

Even if the Court were to find that Defendants were not entitled to qualified immunity, the Court would still grant Defendants' motion for summary judgment. Plaintiff has not

7

sufficiently presented a Fourth Amendment case of excessive force used in his arrest.

Not all claims of tight handcuffing amount to excessive force. Lyons v. City of Xenia, 417 F.3d 565 (6th Cir. 2005). The Sixth Circuit has explained that in order to reach a jury, the Plaintiff must allege some physical injury from the handcuffing. Neague v. Cynkar, 258 F.3d 504, 508(6th Cir. 2001) The *Neague* court stated that "when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment." Id. At 508.

The Tenth Circuit has taken this requirement one step further, explaining that simply alleging physical injury is not sufficient; the Plaintiff must, through his proofs, establish that such injury actually occurred. Hannula v. City of Lakewood, 907 F.2d 129 (10th Cir. 1990). As that court explained, evidence that handcuffing causes some pain but not injury is insufficient to establish excessive force in applying the handcuffs; if injury is minimal or nonexistent, then the force creating it must also be minimal and, therefore, not excessive. Id. At 132. In *Hannula* the court held that the failure to loosen tight handcuffs did not rise to the level of a clearly established constitutional violation. In that case, as here, the claimant presented no evidence of contusions or damage to the bones and nerves of the wrists, did not prove that the amount of force used was substantial, and did not establish malice on the part of the officer.

Similarly, here, while the Sixth Circuit has not addressed a situation of claims of injury without proof of such injury, it follows that if the Sixth Circuit requires allegations of physical injury, it would also require objective proof of such injury. While Plaintiff has alleged that his handcuffing caused him physical injury, he has failed to provide any objective proof of such injury beyond minor swelling. At the booking facility, Plaintiff did not claim any injury and

declined an offer of medical treatment. Multiple medical records indicate that Plaintiff's pain is "subjective," and that there is not objective evidence of any injury of the sort that would normally be associated with too tight handcuffs.

While Plaintiff may believe that he was subjected to excessive force during his handcuffing, the absence of physical evidence of such force warrants dismissal of his claim. Handcuffing is not meant to be pleasant, and it may certainly be uncomfortable, and even to a certain extent painful. However, that alone does not amount to proof of a claim of excessive force. As the *Hannula* court explained, "if the injury is minimal, it is likely that the force creating the injury was also minimal." Hannula, 907 F.2d at 132.

## V.   Conclusion

Accordingly, for the reasons stated herein, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED.


Dated: January 17, 2007           ___s/Bernard A. Friedman_____
          Detroit, Michigan                BERNARD A. FRIEDMAN
                                                    CHIEF UNITED STATES DISTRICT JUDGE


**I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.**

**_____/s/ Patricia Foster Hommel_____
           Patricia Foster Hommel
     Secretary to Chief Judge Friedman**